UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| **Cheryl Gore**, #302308, | ) C/A No. 4:05-1646-HFF-TER |
| Plaintiff, | ) |
| vs. | ) |
| | ) Report and Recommendation |
| The Department of Corrections Medical Department; Officer Jeffcoat; Officer Allen; and Nursing Staff, | ) |
| Defendant(s). | ) |

_____

This is a civil rights action filed by a state prison inmate *pro se.*[1] Plaintiff is incarcerated at the Camille Griffin Graham Correctional Institution (CGGCI), part of the South Carolina Department of Corrections' (SCDC) prison system. She has submitted a Complaint to this Court in which she claims that Defendants committed "negligence and mal-practice" in connection with their responses to and treatment of a recent medical problem that Plaintiff had. Plaintiff's allegations show that she was treated for the problem unsuccessfully at the institution, but was later transferred to an outside hospital where she underwent surgery. She also continued to receive treatment for her condition at the institution after she was discharged from the hospital.

It appears that Plaintiff only began to pursue the SCDC administrative remedy process relative to her claims of improper medical care by filing a grievance on May 2,

_____

[1] Pursuant to 28 U.S.C. §636(b)(1), and Local Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in such *pro se* cases and to submit findings and recommendations to the District Court. *See also* 28 U.S.C. § § 1915(e); 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

2005. She signed her Complaint on May 30, 2005, which means that she did not allow sufficient time for the administrative process to be completed before she filed this case. In fact, Plaintiff acknowledges on page 2 of her Complaint that she had not received a final SCDC answer to her grievance at the time she submitted the Complaint.

Under established local procedure in this judicial district, a careful review has been made of Plaintiff's *pro se* Complaint filed in this case. This review has been conducted pursuant to the procedural provisions of 28 U.S.C. § § 1915, 1915A, and the Prison Litigation Reform Act of 1996, and in light of the following precedents: Denton v. Hernandez, 504 U.S. 25 (1992); Neitzke v. Williams, 490 U.S. 319, 324-25 (1989); Haines v. Kerner, 404 U.S. 519 (1972); Nasim v. Warden, Maryland House of Correction, 64 F.3d 951 (4th Cir. 1995)(*en banc*); Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983); and Boyce v. Alizaduh, 595 F.2d 948 (4th Cir. 1979).

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys, *see* Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9-10 & n.7 (1980); Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. See Fine v. City of New York, 529 F.2d 70, 74 (2d Cir. 1975). Nevertheless, the requirement of liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. See Weller v. Department of Social Servs., 901 F.2d 387(4th Cir. 1990). Even under this less stringent

standard, however, the Complaint filed in this case is subject to summary dismissal under the provisions of 28 U.S.C. § 1915(e)(2)(B).

Correctional systems are required to provide medical care to inmates, and detention facilities are required to provide medical treatment to detainees.  See Helling v. McKinney, 509 U.S. 25 (1993).  The Helling Court stated,

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being. . . .  The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs – e.g., food, clothing, shelter, medical care, and reasonable safety – it transgresses the substantive limits on state action set by the Eighth Amendment[.]

509 U.S. at 32 (quoting  DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 199-200 (1989); see also Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990).

With respect to medical care, a prisoner seeking compensation in a § 1983 case[2] "must allege acts or omissions sufficiently harmful to evidence *deliberate indifference to serious medical needs*." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (emphasis added). In Estelle v. Gamble, the prisoner contended that other examinations should have been conducted by the prison's medical staff and that X-rays should have been taken.  The Supreme Court in Estelle v. Gamble pointed out that not "every claim by a prisoner that he has not received adequate medical treatment states a violation." Estelle v. Gamble, 429 U.S. at 105.  "Although the Constitution does require that prisoners be provided with a

---

[2] Section 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by persons acting under color of state law. See Jennings v. Davis, 476 F.2d 1271 (8th Cir. 1973).  The purpose of section 1983 is to deter state actors from using badge of their authority to deprive individuals of their *federally guaranteed* rights and to provide relief to victims if such deterrence fails. See McKnight v. Rees, 88 F.3d 417(6th Cir. 1996)(emphasis added).

certain *minimum level of medical treatment*, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988)(emphasis added). *Cf.* Whitley v. Albers, 475 U.S. 312, 320 (1986)(a state's responsibility to attend to the medical needs of prisoners does not ordinarily clash with other equally important governmental responsibilities). Although the provision of medical care by prison or jail officials is not discretionary, the type and amount of medical treatment is discretionary. *See* Brown v. Thompson, 868 F. Supp. 326 (S.D. Ga.. 1994)(collecting cases).

Under Estelle v. Gamble, 429 U.S. at 105, the failure of the Defendants to take Plaintiff to the outside hospitals or physicians as quickly as Plaintiff might have desired and any negligence or possible malpractice that might have occurred while attempting to treat Plaintiff's medical problem do not rise to the level of compensable constitutional violations. In Lamb v. Maschner, 633 F. Supp. 351 (D. Kan. 1986), the district court ruled that the proper inquiry for indifference is whether the prison or jail provided *any* treatment, and that the plaintiff's agreement or disagreement with the treatment is irrelevant:

> Even though plaintiff and defendants have a differing opinion as to the proper treatment to be received by plaintiff, this does not in and of itself state a constitutional violation. *See Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976). Therefore, the key question in this case is whether the defendants have provided plaintiff with some kind of treatment, regardless of whether it is what plaintiff desires.

Lamb v. Maschner, 633 F. Supp. at 353; *see* Walker v. Peters, 863 F. Supp. 671 (N.D. Ill.1994)(under Farmer v. Brennan, "mere disagreements between doctor and patient about the course of treatment do not reflect 'deliberate indifference' on the part of the former, although if the patient is right he or she might have a common law (not a constitutional) claim for medical malpractice").

In this case, it is clear from Plaintiff's allegations that the CGGCI's medical staff provided Plaintiff with considerable care for her medical problems, both inside the prison and with outside professionals. Although Plaintiff might have preferred more or different treatment, that un-fulfilled preference does not show medical indifference. In fact, Plaintiff only claims that the Defendants' actions in her case amounted to "negligence and mal-practice." Complaint, at 4. As a result, no medical indifference has been alleged and no constitutional violation has been shown.

The decision of the Supreme Court of the United States in Farmer v. Brennan, 511 U.S. 825 (1994) does not require that process be issued in this case because, essentially, the allegations in the Complaint show only a disagreement as to the proper type and amount of medical treatment provided and a possible claim of medical malpractice by one or more members of the institution's medical staff. It is well settled that negligent or incorrect medical treatment (medical malpractice) is not actionable under 42 U.S.C. § 1983. See Estelle v. Gamble, 429 U.S. at 106. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir. 1987); Pink v. Lester, 52 F.3d 73 (4th Cir. 1995) (applying Daniels v. Williams and Ruefly v. Landon: "The district court properly held that *Daniels* bars an action under § 1983 for negligent conduct[.]"). Also, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. See, e.g., DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-03 (1989); Brooks v. Celeste, 39 F.3d 125 (6th Cir.1994)(Although several courts prior to the Supreme Court's decision

in Farmer v. Brennan held that "repeated acts of negligence could by themselves constitute deliberate indifference, *Farmer* teaches otherwise."); Sellers v. Henman, 41 F. 1100 (7th Cir. 1994)("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-09 (3d Cir. 1990).

Although plaintiff may be able to seek relief under the South Carolina Tort Claims Act, S.C. Code Ann., § 15-78-10 *et seq.*, claims of negligence and medical malpractice are not actionable under § 1983. As a result, since Plaintiff has not pled, nor do the facts disclose, deliberate indifference to her medical needs, this case is subject to summary dismissal without the issuance of process for Defendants.

Moreover, even if Plaintiff's Complaint adequately alleged medical indifference, this case would still be subject to summary dismissal without service of process due to Plaintiff's failure to fully exhaust her SCDC administrative remedies prior to filing this lawsuit as required by 42 U.S.C. § 1997e. In enacting the Prison Litigation Reform Act of 1996[3] (the PLRA), Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions[4] under section 1983 of this title, or any other Federal law, by a prisoner[5]

---

[3] Pub. L. No. 104-134, Title VIII, 110 Stat. 1321-66.

[4] The PLRA does not define the term "prison conditions" for use in § 1997e. The Sixth Circuit utilizes a definition derived from 18 U.S.C. § 3262:

> [T]he term "civil action with respect to prison conditions" means any civil proceeding arising under federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of

(continued...)

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. § 1997e(a). Accordingly, before Plaintiff may proceed with her claims in this Court, she must first exhaust her administrative remedies available through the SCDC grievance process.[6] The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); *see* Porter v. Nussle, 534 U.S. 516 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir. 2001)(exhaustion required even though plaintiff claimed futility); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001)(exhaustion required even though plaintiff claimed he was afraid); *see also* Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001)(unpublished opinion)(applying Booth v. Churner to affirm district court's denial of relief to plaintiff).

---

[4](...continued)
persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.

Id. § 3626(g)(2). *See* Hartsfield v. Vidor, 199 F.3d 305, 308 (6th Cir. 1999) (specifically requiring exhaustion of plaintiff's equal protection claim). The Second Circuit derives its definition from existing case law, defining prison conditions as "'those aspects of prison life affecting the entire prison population, such as the food, medical care, recreational facilities and the like,'" including "action affecting the prisoner [that] was dictated by prison policy or reflected a facility-wide practice affecting the entire inmate population." Neal v. Goord, 267 F.3d 116, 2001 WL 1178293 (2d Cir., Oct 04, 2001) (quoting Lawrence v. Goord, 238 F.3d 182, 185 (2d Cir. 2001) (*per curiam*)). Both of these definitions encompass Plaintiff's claims herein.

[5] Subsection (h) defines "prisoner" to mean, in pertinent part, "any person incarcerated or detained in any facility who is **accused of**, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law[.]" Id. § 1997e(h) (emphasis added). Thus, exhaustion of administrative remedies is also required of pretrial detainees.

[6] In orders filed on May 9, 1996, this Court certified that the inmate grievance procedure established by the South Carolina Department of Corrections met the standards required by 42 U.S.C. § 1997e(a)(2). *See* the orders filed in Misc. No. 3:96-MC-83-2 and Misc. No. 3:96-MC-84-2 (D.S.C., May 9, 1996), which incorporate by reference SCDC PS-10.01 (May 1, 1996).

In order to completely exhaust the SCDC administrative remedy, an inmate must fill out a Form 10-5, Step 1 grievance about the matters raised in the inmate's complaint and give the form to the Institutional Inmate Grievance Coordinator within fifteen (15) days of the alleged incident of which the inmate complains. The Warden will respond to the Step 1 grievance in writing no later than forty (40) days from the filing of the initial grievance. If the inmate is not satisfied with the Warden's response, the inmate must file an appeal of the Step 1 grievance response by filing a Form 10-5a, Step 2 Request for Responsible Official Review with the Inmate Grievance Coordinator within five (5) days of the receipt of the response from the Warden. A responsible official will have *sixty (60) days* to respond to the Step 2 grievance. The decision of the "responsible official" who answers Step 2 is the Department's final response in the matter. If the prisoner is not satisfied with the response of the Step 2 SCDC Responsible Official Review, he or she may then file a complaint in Federal District Court about the alleged problems with the conditions of their confinement that were raised in their grievance.

Since it does not appear that Plaintiff allowed sufficient time for the internal grievance procedure to run its course before submitting her Complaint to this Court, this case is subject to summary dismissal for lack of exhaustion of administrative remedies. Requiring the plaintiff to proceed in the SCDC administrative processl before pursuing any federal remedies she may have provides her with an opportunity to prevail in state court that will be lost if the federal court proceeds without requiring that state remedies be exhausted. Furthermore, summary dismissal of this case because of non-compliance with the Prison Litigation Reform Act will prevent the plaintiff from needlessly incurring a non-

dischargeable debt of $250 to the United States. See Kahn v. Malinov,, 1996 WL 311447 (E.D. Pa., June 6, 1996); see also Smith v. Urban, 928 F. Supp. 532 (E.D. Pa. 1996).

### Recommendation

Accordingly, it is recommended that the District Court dismiss the Complaint in this case *without prejudice* and without issuance and service of process. See Denton v. Hernandez; Neitzke v. Williams; Haines v. Kerner; Brown v. Briscoe, 998 F.2d 201, 202-04 & n. * (4th Cir. 1993); Boyce v. Alizaduh; Todd v. Baskerville, 712 F.2d at 74; *see also* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal). Plaintiff's attention is directed to the important notice on the next page.

Respectfully submitted,

s/Thomas E. Rogers, III

Thomas E. Rogers, III
United States Magistrate Judge

July 1, 2005
Florence, South Carolina

**The parties attention is directed to the important notice contained on the following page.**

**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"**
**&**
**The Serious Consequences of a Failure to Do So**

  The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of service. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-71 (1976); Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

  During the period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** *See* Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992); Oliverson v. West Valley City, 875 F. Supp. 1465, 1467 (D. Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. *See* Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991); *see also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard,, the court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"; which involved a *pro se* litigant); Goney v. Clark, 749 F.2d 5, 7 n. 1 (3d Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). **This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins; Small v. Secretary of HHS, 892 F.2d 15, 16 (2d Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**P. O. Box 2317**
**Florence, South Carolina 29503**
